UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMESH GURNANI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>　　　　Defendants. | No. 1:23-cv-01293-ADA-SKO<br><br>ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(ECF No. 4) |

**PROCEDURAL BACKGROUND**

On August 29, 2023, Plaintiff Ramesh Gurnani ("Plaintiff") filed the instant lawsuit. (ECF No. 1.) To preclude the need for Plaintiff to file a motion for a temporary restraining order ("TRO"), the parties, through counsel, agreed to hold the suspension in abeyance until September 15, 2023, to negotiate a resolution. (ECF No. 6 at 3-4.) On September 6, 2023, Defendants United States Department of the Interior, National Park Service, and Cicely Muldoon ("Defendants") provided Plaintiff a settlement offer in exchange for dismissal of the lawsuit. (*Id.* at 4.) However, Plaintiff neither rejected nor accepted the offer. (*Id.*)

On September 11, 2023, Plaintiff filed the instant motion for a TRO to stay Defendants decision to suspend Plaintiff's Commercial Use Authorization for ninety-days, with the suspension beginning on September 15, 2023. (ECF No. 4.) On the same date, the Court issued a minute order setting the briefing schedule for Plaintiff's motion and vacated the hearing set for September 18,

1

2023, at 1:30PM. (ECF No. 5.) On September 14, 2023, Defendants filed an opposition. (ECF No. 6.) On September 19, 2023, Plaintiff filed an untimely reply to Defendants' opposition. (ECF No. 7.) For the reasons set forth below, the Court denies Plaintiff's motion for a temporary restraining order.

**FACTUAL BACKGROUND**

The following facts derive from Plaintiff's motion and Defendants' opposition. (ECF Nos. 4, 6.) Plaintiff operates Crossroads Tours ("Crossroads") in Oakhurst, CA, a long-tenured transportation service in Yosemite National Park ("Yosemite"). (ECF No. 4 at 6.) Crossroads has 19 employees. (*Id.*) Defendant National Park Service ("NPS") has discretion to issue permits for commercial operations within Yosemite, and NPS suspended Plaintiff's permit to provide tours and taxi visitors within Yosemite for a ninety-day period with the suspension set to begin on September 15, 2023. (ECF No. 6 at 1.) The permit is called a "Commercial Use Authorization" ("CUA"), and NPS may grant CUAs to individuals to provide services that NPS determines will have a minimal impact on the resources and values of Yosemite. (*Id.* at 2, 4 (citing 54 U.S.C. § 101925(b)(1)(A)).) Annually, Plaintiff and other service providers must apply for a CUA to continue operating their businesses within Yosemite. (ECF No. 6-3 at ¶ 5.) NPS granted Plaintiff's current CUA in January 2023. (ECF No. 6 at 2, 4.)

Over the past three years, Crossroads and its employees have committed violations of the CUA, resulting in previous suspensions and the current suspension of Plaintiff's CUA. (ECF No. 6 at 2.) In November 2022, NPS suspended Plaintiff's CUA for thirty days because (1) Crossroad employees parked in wrong areas, including an area used to stage fire engines and equipment; (2) Crossroad employees improperly offloaded passengers; and (3) Crossroad employees had used personal Disabled Person ("DP") placards to park in limited disability-only parking spots, although warned by NPS to not use DP placards in this manner. (*Id.*)

Continuous violations of CUA conditions resulted in the current suspension of Plaintiff's CUA. (*Id.* at 3.) On July 11, 2023, NPS issued a notice to Plaintiff that it was considering suspending his CUA. (*Id.*) The notice listed multiple violations, including the following:

- On July 2, 2023, a Crossroads employee received a citation for driving while a six-year-old and an eight-year-old were standing out of the open top of the vehicle. No child safety seats were in the vehicle, in violation of state law.
- On June 30, 2023, a Crossroads employee was recorded speeding.
- Crossroads employees continued to drive in areas without permission.
- Crossroads advertised unauthorized services, such as in-park pickup services.
- Crossroads was operating with a suspended Transportation Charter Party certificate, which is a legal requirement for chartered transportation of passengers under state law. *See* Cal. Pub. Util. Code § 5371.

(*Id.*) Despite receiving notice and time to address the violations, Crossroads continued to violate conditions of the CUA. (*Id.*) On July 27, 2023, NPS notified Plaintiff that it was going to suspend Crossroads' CUA for 120 days, effective on August 1, 2023. (*Id.*) Upon Plaintiff's appeal of the decision, NPS held the suspension in abeyance until September 1, 2023, and reduced the suspension from 120 to 90 days. (*Id.*)

Failure to grant the TRO would result in the unemployment of Plaintiff's 19 employees, the end of Plaintiff's business, and the cancelation of contracts with customers. (ECF No. 4 at 6.) Plaintiff requests for a TRO staying the suspension of Plaintiff's CUA permitting him to provide commercial transportation services in Yosemite and a preliminary injunction. (*Id.*)

**LEGAL STANDARD**

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After

*Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "The first factor 'is a threshold inquiry and is the most important factor.'" *Baird v. Bonta*, No. 23-15016, 2023 WL 5763345, at *2 (9th Cir. Sept. 7, 2023) (internal quotations and citations omitted). As such, a "court need not consider the other factors" if the moving party fails to show a likelihood of success on the merits. *Id*. (citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)).

The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*)).[1] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

A court may only issue a temporary restraining order without notice to the adverse party when:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and]
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

---

[1] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

4

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## ANALYSIS

### A.   Rule 65 Notice

Federal Rule of Civil Procedure 65 requires "the movant's attorney [to] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Here, Plaintiff submitted their proofs of service to all Defendants on September 11, 2023. (ECF No. 4-2 at 2.) Therein, Plaintiffs served "copies of the moving papers for this *ex parte* application concurrent with the filing of this application" via email. (*Id.*) Therefore, the Court finds that issuance of this order on an *ex parte* basis is justified for the reasons set forth above. As such, the Court turns to whether it may grant Plaintiff's requested injunctive relief.

### B.   Whether a Temporary Restraining Order is Appropriate

#### 1.   Likelihood of Success on the Merits

A challenge to NPS's decision to deny or suspend a permit is brought under the Administrative Procedure Act ("APA"). *See Drakes Bay Oyster Co. v. Salazar*, 921 F. Supp. 2d 972, 984-85 (N.D. Cal. 2013). Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Ninth Circuit "recognized that this standard is 'highly deferential, presuming the agency action to be valid' and that we may not substitute our judgment for that of the agency." *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1084 (9th Cir. 2011) (citing *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007).

In his motion, Plaintiff argues that three of the four grounds for the CUA suspension were not based on a formal citation and lack foundation. (ECF No. 4 at 10-11.) In opposition, Defendants assert that there is no requirement that a citation be issued prior to suspending a CUA and provided a declaration of Defendant Cicely Muldoon who is the Superintendent for Yosemite

in support. (ECF No. 6 at 6; ECF No. 6-3.) Ms. Muldoon is responsible for all aspects of park management and operations in Yosemite, including the decisions to grant, suspend, revoke, and deny permits and other use authorizations. (ECF No. 6-3 at ¶ 3.) Defendants also attach the CUA issued to Plaintiff on January 1, 2023, which provides that "[t]he holder shall provide the authorized commercial services to visitors under operating conditions satisfactory to the area Superintendent." (ECF No. 6-4 at 2-3.) The CUA further provides that "[t]he holder shall take every reasonable precaution to ensure the safety of its clients, its employees, other park visitors, and park employees in as far as they may be affected by the activities of the holder. Federal, state, county, and NPS guidelines regarding public health and safety must be followed." (*Id.* at 5.) Defendants also provide the correspondence between Defendants and Plaintiff that put him on notice of the consideration of a suspension of the CUA and the actual decision to suspend the CUA. (*See* ECF No. 6-5 at 2-4; ECF No. 6-6 at 2-4.)

Contrary to Plaintiff's allegations, Defendants note that Crossroad employees have been cited for several safety violations. (ECF No. 6-3 at ¶ 16.) "Specifically, over Labor Day weekend, a Crossroads employee was cited for going 38 mph in a 25 mph zone. In addition, Crossroads was cited for a parking violation on August 25, 2023." (*Id.*) On July 2, 2023, a Crossroads employee received a citation for driving while a six-year-old and an eight-year-old were standing out of the open top of the vehicle. (ECF No. 6 at 2.) As required by state law, there were no child safety seats in the vehicle. (*Id.*) Therefore, the Court finds Plaintiff's argument that Defendants were arbitrary, capricious, or abused their discretion when they issued the suspension of his CUA unavailing. Defendants suspended Plaintiff's CUA based on violations of the CUA terms. *See* 5 U.S.C. § 706(2)(A). Plaintiff is thus not likely to succeed on the merits of his claim, precluding this Court from granting a TRO.

2. Irreparable Harm

The Court also finds that Plaintiff fails to allege irreparable harm in the absence of the granting of preliminary injunctive relief. The risk of irreparable harm must be "likely, not just possible." *All. for the Wild Rockies*, 632 F.3d at 1131. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine*

1   *Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  However, the irreparable injury alleged
2   here appears to be related to monetary damages.  One can seek a TRO for only monetary damages
3   in "extraordinary cases."  *See In re Est. of Ferdinand Marcos, Hum. Rts. Litig.*, 25 F.3d 1467, 1480
4   (9th Cir. 1994) (holding that a district court has authority to issue a preliminary injunction in
5   "*extraordinary* cases in which equitable relief is not sought" where plaintiffs "can establish that
6   money damages will be an inadequate remedy due to impending insolvency of the defendant or that
7   defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").

8   In his motion, Plaintiff argues that the suspension of the CUA will result in Crossroads
9   going out of business, subjecting 19 employees to unemployment.  (ECF No. 4 at 11.)  Plaintiff
10  further contends that the suspension damages Plaintiff's business reputation.  (*Id.* at 12.)  Plaintiff
11  provides a declaration but does not cite to any case law to support his argument.  (*Id.* at 11-12.)

12  In opposition, Defendants argue that Plaintiff fails to explain why the alleged loss of
13  revenue is not compensable through monetary damages if he were to prevail on the merits.  (ECF
14  No. 6 at 6.)  Because Plaintiff had his CUA suspended in the past, prior to this current suspension,
15  and his business continued to operate after the previous suspension, Defendant contends that
16  Plaintiff's argument that his business will cease to exist due to the current suspension is unlikely.
17  (*Id.*)  In other words, Plaintiff fails to explain why this suspension would put him out of business
18  while the previous suspension had not resulted in the end of his business.  (*Id.*)

19  The Court finds that Plaintiff's alleged irreparable harm of lost profits and income does not
20  constitute irreparable harm.  *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d
21  1197, 1202 (9th Cir. 1980) ("It is well established, however, that such monetary injury is not
22  normally considered irreparable."); *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)
23  ("Economic harm is not normally considered irreparable.").  Further, Plaintiff's alleged harm to
24  reputation is not irreparable because he failed to provide any evidence other than his own
25  declaration attached to the TRO.  *See Tok Air Serv., LLC v. Haaland*, No. 4:21-cv-0012-HRH, 2021
26  WL 3271342, at *8 (D. Alaska July 30, 2021) (holding that the plaintiff failed to allege irreparable
27  harm to his reputation because he did not provide more evidence than his own affidavit).  Rather,
28  Plaintiff could have provided letters from his clients that they would not further use Plaintiff's

services if their trips planned during the 90-day suspension were cancelled. *See id.* Also, Plaintiff provides no authority under which the Court may consider irreparable harm to third parties in lieu of or in addition to irreparable harm to him. *See id.* (citing *Nutrition Distrib., LLC v. Enhanced Athlete, Inc.*, No. 2:17-cv-2069-JAM-CKD, 2017 WL 5467252, at *2 (E.D. Cal. Nov. 14, 2017)). Therefore, Plaintiff does not allege irreparable harm, failing to meet another prong of the TRO analysis.

## CONCLUSION

Since Plaintiff is unable to make a showing under the first two factors; to wit, success on the merits and irreparable harm, the Court need not, and will not, consider the remaining factors. *See Baird*, 2023 WL 5763345, at *2 (internal quotations and citations omitted) (stating that if the moving party fails to show likelihood of success on the merits, a court need not consider the other factors). Accordingly,

1. Plaintiff's *ex parte* motion for temporary restraining order, (ECF No. 4), is DENIED.

IT IS SO ORDERED.

Dated:   September 25, 2023

_____
UNITED STATES DISTRICT JUDGE